# GETMAN, SWEENEY & DUNN, PLLC

Attorneys at Law
260 Fair Street
Kingston, N.Y. 12401
845-255-9370
fax 845-255-8649

<u>Via ECF</u>

January 3, 2024

Honorable Katharine H. Parker
U.S. District Court
Southern District of New York
500 Pearl Street, Room 750
New York, NY 10007

Re:   *Bonilla et al. v. Lucero Produce II Corp. et al.* 22 Civ. 153 (AS)(KHP)

Dear Judge Parker:

Getman Sweeney & Dunn PLLC ("GSD") and the New York Legal Assistance Group ("NYLAG") represent the Plaintiffs in the above captioned matter. We, together with counsel for Lucero Produce II Corp. and Saul Lucero ("Defendants"), write jointly to request approval of the Settlement Agreement between Plaintiffs and the Defendants (together, the "Parties"), which resolves Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Court approval is appropriate, as the Settlement Agreement and Release ("the Agreement"), attached as Exhibit 1, constitutes a fair and reasonable compromise of a bona fide dispute.

## I.     Claims and Defenses

Plaintiffs Alicia Bonilla ("Ms. Bonilla"), Hector Leonardo Martinez ("Mr. Martinez"), Domingo Morales Cabrera ("Mr. Morales") and Fermin Fabian Treviño (Mr. Treviño) (collectively, "Plaintiffs") brought this action against their former employers, Defendants Lucero Produce II Corp. and Saul Lucero (collectively "Lucero"), to seek redress for minimum and overtime wage violations and statutory violations, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and New York Labor Law ("NYLL") §§ 195, 652 and applicable regulations, 12 NYCRR §§ 142 *et seq.*

Plaintiffs worked for varying periods between 2011 and 2021 in Lucero's Bronx wholesale produce market and warehouse.[1] As fully detailed in the complaint (Dkt. 1), Plaintiffs alleged that they worked between 20 to 92 hours per week, but Lucero (i) unlawfully paid them less than the New York state minimum wage; (ii) failed to pay them any overtime premium of one and a half times the state minimum wage for hours worked over 40 in a week; (iii) failed to pay them "spread of hours" wages for shifts longer than ten hours; and (iv) failed to provide legally mandated hiring

---

[1] Plaintiffs did not seek wages for work performed outside of the New York Labor Law statute of limitations period.

1

notices and wage statements. Dkt. 1 at ¶¶ 37-45; 53; 54; 60; 83-86; 91; 118-120; 168-865. In addition, Plaintiffs alleged that Lucero failed to pay Ms. Bonilla any wages for her final week of work. *Id.* at ¶ 45. Plaintiffs sought their owed wages, as well as liquidated damages and statutory penalties. *See id.* ¶¶ 170, 172, 175, 182, 185. Plaintiffs also sought pre-judgment interest, costs and attorneys' fees. *See id.* at 27.

Defendants denied nearly all of Plaintiffs' factual allegations and raised 26 affirmative defenses in their Answer, including that Defendants had acted with good faith and that Plaintiffs were thus not entitled to liquidated damages. Dkt. 16 at ¶¶ 187-212.

## II.     Procedural History

### A. Initial Disclosures and Discovery Requests, and June 14, 2022 Settlement Conference

Plaintiffs filed this this action on January 7, 2022 and Defendants filed their Answer on March 4, 2022. Dkts. 1; 16. The Parties exchanged Rule 26 disclosures on March 29, 2022, during which Plaintiff provided Defendants with detailed damages computations for each Plaintiff, along with documents related to their employment. On April 11, 2022, Plaintiffs made their opening settlement demand. In April and May 2022 the Parties exchanged discovery requests, and in May 2022 Defendants provided Plaintiffs with approximately 400 pages of disclosures, including some time and pay records, though it was undisputed that those records were incomplete. The Parties attended a settlement conference before this Court on June 14, 2022.

At the settlement conference, Defendants contended that all Plaintiffs worked fewer hours than alleged and asserted that they paid Plaintiffs properly for hours worked. They also contended that certain Plaintiffs worked for a much shorter period than claimed in the Complaint. Plaintiffs contended that Defendants could not rely on the records they had produced because they were incomplete and unreliable in several respects. The Parties were not able to reach an agreement, due in large part to their dispute concerning the sufficiency of Defendants' payroll and time records. At the end of the conference, Defendants represented that they were in the process of collecting additional payroll and time records, and the Parties agreed to adjourn the conference in order to allow Defendants time to do so. The parties also agreed not to conduct additional discovery during this time. Three months later, in late September 2022, Defendants confirmed that they did not possess any additional records, and made a counteroffer to Plaintiffs' last offer at the settlement conference, which Plaintiffs rejected. Defendants then rejected Plaintiffs' counter demand, and the parties proceeded to conduct additional discovery. Though Defendants did not provide additional documents, in November 2022, after further reviewing Defendants' production of documents, Plaintiffs revised their estimated damages and extended a revised demand. Consistent with prior negotiations, counsel informed Defendants that the amount would be apportioned based on Plaintiff's understanding of percentages owed to each Plaintiff of the total amount. Defendants responded that they were no longer interested in a global settlement and notified Plaintiffs that they would proceed with depositions.

The Court subsequently granted the Parties' numerous requests to extend discovery. Dkt. 29 (Jan. 13, 2023); Dkt. 39 (Feb. 2, 2023); Dkt. 42.

### B. Depositions and Additional Negotiations

Defendants deposed each Plaintiff on December 5, 2022, with Plaintiff Treviño's deposition continuing on December 14, 2022. Plaintiffs deposed Lucero's 30(b)(6) witness, Olivia Lucero, on January 4, 2023, and Saul Lucero on February 10, 2023. Following Defendants' depositions, Plaintiffs requested additional production of documents, but those documents were never produced.

Following depositions, the Court granted the Parties' request to adjourn the March 2, 2023 Case Management Conference, for purposes of settlement negotiations, and to allow Defendants to compute a revised settlement offer. Dkt. 44.

On May 23, 2023, the Parties jointly requested a settlement conference, which the Court scheduled for September 11, 2023. Dkt. 46; 47.

On March 21, 2023, in preparation of the September settlement conference, Lucero extended a revised counteroffer for each Plaintiff that drastically reduced their initial offers from June and September 2022. The Parties met and conferred on April 26, 2023, and Plaintiffs declined to make a counteroffer to this lowered demand. Again, the principal dispute between the parties was whether Defendants were properly relying on their records as a basis for calculating Plaintiffs' damages. Notwithstanding this dispute, Defendants subsequently revised their offer on August 14, 2023, and again on September 6, 2023, in anticipation of the September 11 conference.

### C. Getman Sweeney & Dunn Becomes Lead Counsel and Represent Plaintiffs at September 11, 2023 Settlement Conference

Prior to the September 11 settlement conference, on August 17, 2023, GSD took over representation of the Plaintiffs, in light of lead counsel Anamaria Segura having left NYLAG following a six-month parental leave and joining GSD effective May 1, 2023. Geno Nettle, the attorney who handled this matter for NYLAG during Ms. Segura's leave, left NYLAG on August 16, 2023. *See* Dkts. 49, 51. Accordingly, despite GSD continued NYLAG's negotiations with Defendants, prepared the Plaintiffs' settlement conference statement, and represented Plaintiffs at the September 11, 2023 settlement conference.

At the settlement conference, the Parties came to the present settlement amount once Defendants revised their offer a fourth time, meeting their previous highest offer made in September 2022, and once Defendants agreed to extend a global offer to be allocated at the discretion of the Plaintiffs. The Parties were able to come to an agreement within hours, and the Parties executed a term sheet setting forth the material terms and conditions of the agreement.

Having spent the past several months drafting and negotiating the final settlement terms, the Agreement was finally fully executed on January 3, 2023.

## III. The Agreement

Defendants have agreed to pay Ms. Bonilla, Mr. Martinez, Mr. Morales and Mr. Treviño $69,243.97, $91,235.96, $76,882.68 and $142,637.39, respectively, in exchange for a release of their wage and hour claims. *See* Agreement ¶ 1. In addition, Defendants agree to pay Plaintiffs' counsel $50,000 in fees and costs, for a total settlement of $430,000 ("the settlement sum"). *See*

*id.*

The total settlement sum will be paid in 16 equal installments of $26,875, with the first payment made within 30 days of the order approving the Settlement Agreement. *See* Agreement ¶¶ 1; 2(b). Each installment is to be paid 30 days apart and with each installment allocated as follows:

| Party/Counsel | Total Payment | Payments 1-15 | Final Payment |
|---|---|---|---|
| Bonilla | $69,243.97 | $4,327.74 | $4,327.87 |
| Morales | $91,235.96 | $5,702.25 | $5,702.21 |
| Martinez | $76,882.68 | $4,327.75 | $4,327.94 |
| Treviño | $142,637.39 | $8,914.84 | $8,914.79 |
| Getman, Sweeney & Dunn | $13,193.00 | $824.56 | $824.60 |
| NYLAG | $36,807.00 | $2,300.44 | $2,300.40 |

*See id.* ¶ 2(a)-(b).

To guard against the risk of Defendants' default over the course of the 16-month payout period, Defendants have agreed to execute Confessions of Judgment for the full amount of the settlement sum. *See id.* ¶ 4, Exhibit A to Agreement. The executed Confessions of Judgment will be held in escrow by Plaintiffs' counsel pending the payment of the full settlement amount.

## **LEGAL ANALYSIS**

The parties seek the Court's approval of this negotiated settlement as fair and reasonable, as required by the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).

**I.    The Proposed Settlement Is Fair and Reasonable to All Parties.**

**A.    Settlement Amount**

The sufficiency of a FLSA settlement depends on the totality of circumstances, including but not limited to the following factors cited in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012):

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

**1.    Plaintiffs' Range of Possible Recovery**

Pursuant to the Agreement, Plaintiffs' settlement sum is $430,000, and Plaintiffs will receive $380,000 of that amount. Before attorneys' fees, costs or pre-judgment interest, Plaintiffs' counsel estimates Plaintiffs' maximum recovery against the Defendants under the FLSA and

4

NYLL to total approximately $431,673.58. Plaintiffs' counsel estimates that the Plaintiffs' maximum individual recovery is broken down as set forth below, alongside the amount they will receive in the proposed settlement.

| Bonilla | Maximum Recovery | Settlement Amount |
|---|---|---|
| Wages | $36,601.29 | $36,601.29 |
| Liquidated Damages | $36,601.29 | $22,642.68 |
| Wage Notice & Statement Penalties | $10,000.00 | $10,000.00 |
| **Total** | **$83,202.58** | **$69,243.97** |
| **Morales** | **Maximum Recovery** | **Settlement Amount** |
| Wages | $41,426.43 | $41,426.43 |
| Liquidated Damages | $41,426.43 | $39,809.53 |
| Wage Notice & Statement Penalties | $10,000.00 | $10,000.00 |
| **Total** | **$92,852.86** | **$91,235.96** |

| Martinez | Maximum Recovery | Settlement Amount |
|---|---|---|
| Wages | $40,529.07 | $40,529.07 |
| Liquidated Damages | $40,529.07 | $26,353.61 |
| Wage Notice & Statement Penalties | $10,000.00 | $10,000.00 |
| **Total** | **$91,058.14** | **$76,882.68** |

| Treviño | Maximum Recovery | Settlement Amount |
|---|---|---|
| Wages | $77,280.00 | $77,280.00 |
| Liquidated Damages | $77,280.00 | $55,357.38 |
| Wage Notice & Statement Penalties | $10,000.00 | $10,000.00 |
| **Total** | **$164,560.00** | **$142,637.38** |

A further, more detailed breakdown of each individual Plaintiff's estimated damages is attached hereto as Exhibit 2.[2]

On the other hand, Defendants' estimates of Plaintiffs' maximum unpaid wages under the FLSA and NYLL are as follows: to Bonilla, $19,182.26, to Morales, $23,406.35, to Martinez, $20,702.50, and to Treviño, $13,006.97, for a total of $76,298.08, excluding any amount for liquidated damages. Defendants' estimates are based on fewer weekly hours worked and fewer weeks of employment than Plaintiffs contend to have worked.

---

[2] Plaintiffs have revised their earlier estimates of their maximum recovery, based on certain Plaintiffs' deposition testimony that they worked fewer weekly hours than originally set forth in the Complaint.

As reflected above and in the attached calculations, Plaintiffs could only collect the full recovery under the FLSA and NYLL if several factual inferences were resolved in their favor. In particular, each Plaintiff would have to prove they in fact worked the number of hours to which they testified during their depositions, over Defendants' contentions otherwise. In addition to contesting the number of hours worked per week by the plaintiffs, Defendants would challenge each Plaintiff's entitlement to liquidated damages.

Given the Parties' factual disputes, the proposed settlement provides substantial recovery for each Plaintiff. Exclusive of attorneys' fees or pre-judgment interest, the net settlement amounts to be paid to Ms. Bonilla, Mr. Morales, Mr. Martinez and Mr. Treviño represents full recovery of wages owed, full statutory penalties for notice and wage statements under the NYLL, as well as approximately 96%, 62%, 65% and 72% of the full amount of liquidated damages owed, respectively. Accordingly, via the proposed settlement, Plaintiffs will receive 83%, 99%, 84% and 87% of Plaintiffs' estimate of their maximum recovery, respectively. These amounts are well within and above the typical range of recovery that represents a reasonable compromise of such claims. *See, e.g.*, *Flores v. Dynamic Wireless NYC LLC*, 21 Civ. 6160, 2022 WL 3363584, at *2 (S.D.N.Y. July 1, 2022) (plaintiff received nearly 50% of best-case recovery, not including liquidated damages or penalties); *Fraticelli v. MSG Holdings, L.P.*, 13 Civ. 6518, 2018 WL 5004867 at *2 (S.D.N.Y. Oct. 16, 2018) (plaintiffs received 48% and 37% of alleged individual damages); *Chowdhury v. Brioni America*, Inc., 16 Civ. 344, 2017 WL 5953171 at *2 (S.D.N.Y. Nov. 29, 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable).[3] Moreover, the amounts being paid to each Plaintiff represent a recovery of well over 100% of Plaintiffs' calculation of their actual minimum wage and overtime underpayments, before liquidated damages and penalties. *See Deran v. Antalia Turkish Cuisine LLC*, 19 Civ. 6833, 2020 WL 3414890 at *2 (S.D.N.Y. June 22, 2020) (Moses, M.J.) (approving as fair and reasonable FLSA settlement where plaintiff's recovery was 10% higher than his claim for actual unpaid wages and overtime).

Accordingly, the Parties believe that a settlement of $380,000 exclusive of attorneys' fees and costs, is fair and reasonable.

### 2. Burdens and Expenses of Establishing Claims and Defenses, and Seriousness of Litigation Risk

All parties face considerable risks in proceeding with this litigation. As set forth above, there are significant factual disputes that could affect the amount of the Plaintiffs' recovery. Even though the Plaintiffs are confident in the strength of their claims and are prepared to prove them, the Defendants have asserted that they worked far fewer hours than alleged, and for shorter periods of employment. The Defendants have provided some payroll and time records to support their contentions and may be able to provide witnesses to support their position. Moreover, the Plaintiffs' deposition testimony concerning hours worked differed in certain respects to the facts

---

[3] Courts in this district do not generally consider pre-judgment interest when assessing the fairness of this settlement. *See, e.g.*, *Tapia v. Mt. Kisco Bagel Co. Inc.*, 18 Civ. 02864, 2018 WL 4931542, at *2 (S.D.N.Y. Oct. 10, 2018) (assessing settlement exclusive of pre-judgment interest); *Ortiz v. My Belly's Playlist LLC*, 16 Civ. 2924, 2018 WL 1918611, at *3 (S.D.N.Y. Apr. 19, 2018) (same); *Romero v. Fluff N Fold Laundry Servs. LLC,* l5 Civ. 9535, 2018 WL 2768642, at *2 (S.D.N.Y. June 8, 2018) (same); *Gamero v. Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 172, 176 (S.D.N.Y. 2018) (same).

alleged in the Complaint, which could affect a fact finder's assessment of Plaintiffs' credibility concerning hours worked, even in the absence of full payroll and time records produced by the Defendants. Moreover, the Court could also find that the Defendants acted in good faith and thus decline to award any amount in liquidated damages.

Conversely, the Defendants are mindful that defeating Plaintiffs' claims may require additional protracted litigation and considerable cost, including extensive attorney time and payment of court-certified interpreters at trial. Accordingly, the parties have entered into this Agreement with the shared goal of avoiding the considerable burdens, expenses and inherent risk of continuing with this litigation. In light of the parties' good faith factual disputes and the attendant risk and costs of proceeding with this litigation

### 3. Arm's-Length Bargaining and Possibility of Fraud or Collusion

"Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013). A settlement negotiated by experienced counsel and reached with the assistance of a third-party neutral is presumed fair. *Vasquez v. TGD Grp., Inc.*, 14 Civ. 7862, 2016 WL 3181150, at *3 (S.D.N.Y. June 3, 2016) (citing *Hernandez v. Anjost Corp.*, 11 Civ. 1531, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013)) (finding due process where parties engaged in arm's length negotiations making "the possibility of fraud and collusion [] minimal").

The Agreement is the product of arm's-length negotiations between the parties' counsel, including two Court-supervised settlement conferences. The Parties vigorously contested factual and legal disputes during negotiations, and engaged in full discovery, including written discovery and depositions of all Parties. The Parties were prepared to continue forward with litigation including potential summary judgment motions and expected to incur substantial expense as a result of such motion practice and potentially going to trial. The Agreement represents a realistic assessment that each parties' interests are best served by resolution at this point in the case.

Moreover, the Parties to this Agreement are represented by counsel experienced in litigating wage and hour matters, and there is no evidence of overreaching by the Defendants or any evidence of fraud or collusion. The Agreement is fully transparent to the Court, containing no confidentiality provision. The Plaintiffs actively participated at every stage of the litigation and settlement process, attended both settlement conferences, and conferred extensively with counsel concerning the terms of the Agreement.

Plaintiffs' attorneys have decades of experience litigating FLSA and other wage and hour cases. NYLAG has brought numerous lawsuits on behalf of working New Yorkers under the FLSA and NYLL, including cases that concluded with court-approved settlements pursuant to *Cheeks*. *See*, *e.g.*, *Solares v. Kam Fung Wong Inc. et al*, 22 Civ. 718 (S.D.N.Y.); *Martinez v. Chestnut Holdings of New York, Inc. et. al.*, 18 Civ. 7009 (S.D.N.Y.); *Mejia v. Orin Management LLC*, 18 Civ. 11694 (S.D.N.Y.); *Rivera v. Colony Heights LLC et al.*, Civ. 1560 (E.D.N.Y.)*; Beging v. Cabot et al.*, 14 Civ. 2462 (S.D.N.Y.); *Alvarado et al. v. El Anzuelo Fino Corp. et al.*, 12 Civ. 05020 (E.D.N.Y.).

GSD concentrates its practice on FLSA and other wage-and-hour collective and class action litigation, all handled on a contingent basis. A summary of the qualifications of GSD's attorneys, paralegals, and data scientists is available at https://getmansweeney.com/our-team/.

Currently, GSD is litigating wage-and-hour collective and class actions in federal courts in Iowa, Michigan, Mississippi, New York, New Jersey, Wisconsin, South Carolina, and Texas. GSD has litigated FLSA and other wage-and-hour collective and class actions on behalf of tens of thousands of workers across the country, including in Arizona, Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Michigan, North Carolina, Ohio, South Carolina, Texas, Washington, Washington D.C., and West Virginia. GSD is regularly approved as class counsel and has never been rejected as class counsel in a certified class. GSD has served as class counsel in numerous wage and hour actions across the country, including in this district and Circuit. *See, e.g.*, *Roseman v. Bloomberg L.P.*, 1:14 Civ. 02657 (S.D.N.Y.) (approved as class counsel); *Kinkead v. Humana et al.*, 3:15 Civ. 01637 (D. Conn.) (same). Courts throughout the country and in this Circuit have recognized GSD's skill and experience in wage and hour litigation. *See, e.g.*, *Bloomberg L.P.*, 1:14 Civ. 02657 (S.D.N.Y. Oct. 15, 2018) ("The quality of representation for the class was excellent. It was a well litigated case and well-tried case at trial."); *Murphy, et al, v. Northern Dutchess Paramedics*, 7:11 Civ. 05661, ECF ¶ 15 (S.D.N.Y. Aug. 15, 2014) (Smith, M.J.) ("Class Counsel [Getman & Sweeney] has extensive experience in litigating wage and hour collective and class actions. Numerous courts have recognized Class Counsel's extensive experience in successfully litigating wage and hour cases."); *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 119 (E.D.N.Y. 2011) (finding Getman & Sweeney to have "stellar" qualifications as class counsel in wage-and-hour class litigation); *Lewis v. Alert Ambulette Serv. Corp.*, 11 Civ. 442, 2012 WL 170049, at *15 (E.D.N.Y. Jan. 19, 2012) ("[Getman & Sweeney] has brought to bear its considerable experience in handling class actions, and other complex litigation, particularly claims of the type asserted in the present action").

In light of the Parties' extensive arms-length negotiations, including two Court-facilitated settlement conferences, paired with Plaintiffs' counsel considerable expertise, this Court should find there is no evidence of fraud or collusion associated with this Agreement.

## II.     The Parties' Negotiated Non-Monetary Provisions are Reasonable.

In addition to the Plaintiffs' monetary recovery, the Agreement contains the following non-monetary terms, all agreed-upon following arms-length negotiations in good faith between the parties.

### A.  Release of Wage and Hour Claims

Plaintiffs' narrowly tailored release of their wage and hour claims is fair and reasonable. *See* Ex. 1 at ¶ 5. Limited releases do not raise fairness concerns under *Cheeks* and are routinely approved by courts in this District. *See Santos v. Yellowstone Properties, Inc.*, 15 Civ. 3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (limited release approved even where accompanied by separate, general release as to non-FLSA claims); *Martinez v. Gulluoglu LLC*, 15 Civ. 2727, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) (In contrast to narrow releases, "[c]ourts in this District routinely reject release provisions that waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.").

### B.  No Confidentiality; Mutual Non-Disparagement Provision

The Agreement contains no confidentiality provision. It contains a narrowly drafted mutual non-disparagement provision, whereby the Parties agree not to" make untrue statements made with knowledge of their falsity or with reckless disregard for their truth or falsity, injurious to the reputation or business interests of each other." *See* Agreement at ¶ 7. Further, Plaintiffs reserve their right to make truthful statements regarding their litigation of the claims in this action, including providing truthful information that may be used on Plaintiffs' counsel's website. *See id*. Courts in this district have looked favorably on such provisions. *See*, *e.g.*, *Hernandez v. Uzzal Pizzeria, Inc.*, 21 Civ. 177, 2022 WL 1032522, at *1 (S.D.N.Y. April 6, 2022) (approving non-disparagement provision that included "the requisite 'carve-out' for truthful statements about plaintiff's experience litigating th[e] case"); *Deran*, 2020 WL 3414890 at *2 (same); *Lazaro-Garcia v. Sengupta Food Servs.*, 15 Civ. 4259, 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015) (noting that "not all non-disparagement clauses are per se objectionable," but that "if the provision would bar plaintiffs from making any negative statement about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case" (internal quotation marks and citation omitted)).

### III.   Plaintiffs' Attorneys' Fees are Fair and Reasonable

Pursuant to ¶ 2(a) of the Agreement, Plaintiffs' counsel will receive $50,000 in total fees and costs, divided between NYLAG and GSD. NYLAG will receive $35,627.80 in fees and $1,179.20 in costs, and GSD will receive $13,193. The fees and costs represent 11.6% of the total settlement sum, far below one-third of Plaintiffs' total recovery. *See Zekanovic v. Augies Prime Cut of Westchester, Inc.* 19 Civ. 8216, 2020 WL 5894603, at *5 (S.D.N.Y. Oct. 5, 2020), citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (observing that the trend in the Second Circuit is to award fees by considering the percentage of the total amount recovered by the plaintiffs); *Zorn-Hill v. A2B Taxi LLC,* Nos. 19 Civ. 1058, 18 Civ. 11165, 2020 WL 5578357, at *6 (S.D.N.Y. Sept. 17, 2020) (noting that courts routinely award attorneys' fees in FLSA settlements of one-third of the total recovery, and collecting cases).[4] Moreover, after $1,179.20 in costs, the amount sought by Plaintiffs' attorneys is approximately 29% less than their combined lodestar of $67,899.80. NYLAG's requested fees represent a discount of 16% of its billed hourly fees of $42,260, and GSD's requested fees represent a discount of over 50% of its billed hourly fees of $26,819. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (noting that the lodestar method is a useful "cross-check" on the reasonableness of a requested percentage of fees). Plaintiffs' counsel's hourly fee detail is reflected in the time detail records up through November 14, 2023, annexed as Exhibit 3. Notably, NYLAG has exercised considerable billing discretion by not including in their fee detail any hours incurred after April 25, 2023, including settlement negotiations, or any legal intern hours. GSD has exercised similar discretion by excluding hours spent on the matter by some billers and for time spent after November 14, 2023, including time spent revising the settlement agreement and finalizing this *Cheeks* approval motion.

---

[4] The Second Circuit has clarified that there is no proportionality limit on recoverable attorneys' fees in an FLSA case, and thus that courts cannot place an automatic cap on such fees at 33%. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 602-05 (2d Cir. 2020). Here, Plaintiffs' Counsel are requesting a fee award well below that percentage and approval of this award presents no comparable issues relating to approval of the fee award. *Deran* at 2020 WL 3414890 at *2.

9

The rates used in calculating Plaintiffs' Counsel's lodestars are reasonable, and are consistent with rates used by courts in this district and approved in previous FLSA settlements. *See, e.g., Solares v. Kam Fung Wong Inc. et al,* 22 Civ. 718, Dkt. 25 (S.D.N.Y. June 29, 2023) (text order approving FLSA settlement for the same NYLAG attorneys and paralegal at the same rates); *Zorrilla v. Carlson Rests. Inc*., 14 Civ. 02740, Dkt. 514 ¶ 9 (S.D.N.Y. Apr. 9, 2018) (approving rates for Outten & Golden LLP that were higher than GSD's 2018 rates). Further, GSD's rates have been repeatedly approved as part of lodestar crosschecks. *See, e.g., Kinkead v. Humana, Inc., et al*., 3:15 Civ. 1637, Dkt. 432 (D. Ct. Aug. 26, 2021) ("[H]aving conducted a 'cross-check' of Class Counsel's requested fee award using the lodestar method, the Court hereby concludes that Class Counsel's requested fee award of $5,666,666.67 is fair and reasonable and is therefore approved."). Here, Plaintiffs' Counsel's effective rates are a significant departure from their standard rates. For example, Ms. Segura's effective rate in litigating this matter at GSD is approximately $377 per hour, which is well below the rates she has been approved in previous individual FLSA and NYLL cases. *See, e.g., Solares v. Kam Fung Wong Inc. et al,* 22 Civ. 718, Dkt. 25 (S.D.N.Y. June 29, 2023) (text order approving $450 per hour while at NYLAG); *Martinez v. Chestnut Holdings of New York, Inc. et. al*., 18 Civ. 7009, ECF No. 76 (S.D.N.Y. Jan. 9, 2020) (approving $425 in FLSA and NYLL claims); *Pinzon v. 552 La Mina Supermarket, Inc*., 16 Civ. 460, ECF No. 28 (S.D.N.Y. Oct. 18, 2016) (same); *Castillo v. BNV Home Care Agency*, 650726/2013, ECF Nos. 158 ¶ 15; 168 ¶ 8 (Sup. Ct. N.Y. Cty. Feb. 23, 2016) (approving $525 per hour to Ms. Segura as an attorney with six years of experience, in a NYLL wage-and-hour class action lawsuit); *Castillo v. First Care of New York, Inc*., 51140/2013, ECF Nos. 85 ¶ 14; 112 ¶ 10 (Sup. Ct. Westchester Cty., Jan. 20, 2016) (same); *Luna v. Lorenzo & Maria's 1418 Kitchen Co.*, 13 Civ. 1564 (S.D.N.Y); *see also Sykes v. Harris*, No. 09 Civ. 8486, 2016 WL 3030156, at *17 (S.D.N.Y. May 24, 2016) (approving $350/hour rate for Ms. Segura in class action settlement, where she performed work on the matter from 2009 to 2012, as an attorney with one to four years of experience); *see also* Decl. of Matthew D. Brinckerhoff Ex. 5, *¶* 20, *Sykes v. Harris,* No. 09 Civ. 8486, ECF No. 244 (S.D.N.Y. April 18, 2016).

In addition, the hours expended are reasonable for a case that proceeded through full fact discovery and two settlement conferences. In addition, this case posed a particular financial risk to GSD, because the firm took the case on a contingent basis and agreed to depart from its usual practice by representing Plaintiffs individually following the close of discovery. Its work on this case expended staff time and resources that could have been allocated to litigating class and collective action claims, which would generate more fees, including a potential multiplier. Finally, "[q]uality of representation is best measured by results." *Solis v. OrthoNet LLC*, 2021 WL 2678651, at *3 (quoting *Espinal v. Victor's Café 52nd St., Inc*., 16 Civ. 8057, 2019 WL 5425475, at *3 (S.D.N.Y. Oct. 23, 2019) (internal quotation marks omitted)). Here, Plaintiffs' Counsel achieved a substantial recovery for Plaintiffs, including well over full recovery of wages owed, and between 83% and 99% of Plaintiffs' estimate of their maximum recovery.

For the foregoing reasons, the Parties request that the Court approve the Agreement in this matter.

                          Respectfully submitted,

                          s/ Anamaria Segura
                          Anamaria Segura
                          **GETMAN, SWEENEY& DUNN, PLLC**

                                              260 Fair Street
                                              Kingston, New York 12401
                                              Telephone: (845) 255-9370
                                              Fax: (845) 255-8649
                                              asegura@getmansweeney.com

                                              Attorneys for Plaintiffs

<u>Enclosures</u>:

Exhibit 1: Executed Settlement Agreement
Exhibit 2: Plaintiffs' Damages Computations
Exhibit 3: Plaintiffs' Counsel's Fee Detail

cc:      All Counsel (via ECF)